Good morning, your honors. Gretchen Fusilier, appearing on behalf of the appellant, Mr. Drake, if it please the court. Your honors, I'm going to begin with the argument relating to the calculation of the Speedy Trial Act time to be attributed from the territorial court in Guam to the subsequent federal prosecution. What's your strongest case on the notion of attribution? I find this a little unusual. I think the strongest case, your honor, would be Wheeler because I think that basically presents the basis for other cases and other cases have relied on Wheeler to determine that Guam, which was an instrumentality of the federal government as a result of the Organic Act of Guam in 1950. And I think also... Just a minute. You're making now an argument on the Speedy Trial Act, right? That's correct, your honor. And the Speedy Trial Act, doesn't it by its terms apply only to the district courts? No, your honor. What does it help say, the Speedy Trial Act? Well, the Speedy Trial Act... It doesn't apply to the territorial courts of Guam. The Speedy Trial Act is a protection under the Sixth Amendment. I know, but you're not... But that's a, you know, whether the Sixth Amendment has been violated is a different argument from whether or not the Speedy Trial Act has been violated. You say now you're saying it doesn't even apply to the territorial courts of Guam. Well, our argument is that it applies to the territorial government of Guam because Guam is only able to follow rules, judicial rules, as they have been conferred on Guam by the U.S. Congress. Well, I probably agree with you on that, but still, you have to look at the statute. Suppose the statute says, well, the Securities and Exchange Commission shall, you know, issue a subpoena in such a form, and are you saying that applies to the government of Guam? If Guam chooses to pass and enact laws that would parallel that, yes, I would indicate that the basis of that law would also be applicable to Guam, inasmuch as Wheeler has indicated that when a territorial government such as Guam enacts or enforces laws, it is acting as an agent of the federal government, and therefore those federal laws that have been enacted and adopted by Guam would be attributable to Guam, and Guam, in fact, passed a parallel Speedy Trial Act under Guam's Code 80.60, I believe it was, or 40. But you have to make the argument here that there's a violation of the federal Speedy Trial Act, are you? That's correct, Your Honor. And your argument with respect to Guam is kind of an attribution argument, in other words, you have to construe the time as beginning prior to the federal indictment, so you can draw in all that pre-federal indictment time. That's correct, Your Honor. Why don't you just depend on, you know, the Sixth Amendment argument or the equivalent under the Organic Act, instead of under the Speedy Trial Act? Do you think you have a stronger case under the Speedy Trial Act? Your Honor, we have argued a Sixth Amendment violation. I know, but you're arguing now the Speedy Trial Act. Well, I can proceed to the Sixth Amendment. Just to shorten things, you can see from what you're hearing, we're all puzzled about the Speedy Trial Act because it doesn't seem to apply to Guam. The Sixth Amendment argument, however, is an argument that you may want to pursue, but by its terms, would you not agree that the federal Speedy Trial Act does not apply to Guam? Well, Your Honor, inasmuch as that argument was raised in the district court in Guam and the notice of appeal filed by Mr. Drake incorporated that argument, I think I would have been remiss in not incorporating that argument into the appellant's opening brief. However, as... Well, I think we understand your argument, and you might want to go to the Sixth Amendment issue. The Sixth Amendment argument, of course, Your Honor, is the fact that there was a delay between the... Well, under the Sixth Amendment, the Sixth Amendment obviously would also apply to Guam, and because there was that delay between the initial filing of the territorial indictment against Mr. Drake and then a dismissal of that, a subsequent filing by the territorial, charging identical crimes, there was no change in the crimes charged, and subsequent to that, only after the federal government on June 15, 2005, returning an indictment alleging the same offenses, did the territorial court then, at that point, dismiss for a because there is no dual sovereignty here. The delay that was occasioned from the, at least from the last assertion by Mr. Drake, which was in October of 2004 for his speedy trial rights under the Sixth Amendment, that would be attributed to the federal government. Do you have any evidence, counsel, that the Guam authorities and the federal authorities worked hand-in-glove on this case? Your Honor, indirectly, we have argued that in our brief, and what our position is, is that essentially the federal government conducted no investigation of its own. It relied heavily on the investigation that was conducted by the territorial police. It relied on the police reports of Officers Rosetta, Officer Cepeda. It did not, it also had communications, apparently, with the territorial Attorney General, Deputy Attorney General. But wasn't that after the federal government decided to take the case up? Well, it appears that there had been some communication between the federal authorities and the territorial authorities. The passage of the prosecution over to the federal government. Well, the dismissal of the territorial indictment and the institution of the district court case was just within a very short time of each other, right? Just a matter of days, maybe, something like that. The federal government returned an indictment June the 15th of 2005 and the territorial case was dismissed two days later on the 17th. Obviously, they were talking to each other. You have to draw that assumption. Oh, absolutely. However, I believe the question was, on what basis do I believe, or does the record reflect, that there was the attribution of activity on the part of the territorial prosecutors? Well, it's basically the same charge. Absolutely, and we know from cases cited in the opening brief that you don't determine whether or not there were the same charges based on the actual language of the charges, but whether or not the basis of the underlying arrest was the same. And as we cited, if in one of the cases one was arrested for a bank robbery, the federal government, in the state jurisdiction, the federal look at my brief, but essentially case law indicates that other proceedings is not an exception. If the subsequent prosecution by the federal court includes somewhat a lesser offense as prosecuted initially in the state, and in between the indictment in the territorial court and in the federal court, we have essentially a bank robbery. All right, now, but you know, assuming all that's true, here's where I get hung up. Don't you have to show prejudice from the delay? Yes, and I believe we did show. We only need to show presumptive. What's the prejudice? Pardon me, Your Honor? What's the prejudice? We only need to show presumptive prejudice. Well, what's the presumptive prejudice? The presumptive prejudice is that the delay occasioned the destruction of evidence. It also occasioned... Can you point to any specific evidence that was, you know, not available, that would have been available two years earlier? We do know that there was the destruction of the video surveillance tape that occurred during the Mobile Gas Station robbery. Had the federal government perhaps initiated the... Well, but you know, I don't think that was, I don't think that was related to the delay or not. I mean, my recollection is that, you know, that was just routinely erased every 60 days or something like that, right? It may have been, Your Honor. The problem arises is that the Guam Territorial Authorities chose not to inform Mr. Drake or his his attorneys at the time of that policy. So that's not something that comes from the delay. Maybe it comes from some negligence on the part of the Guam police, but that's not caused by the delay. It's not even clear that the surveillance evidence ever got to the police. Oh yes, it was clear. Well, they got their stills. They have some stills from the... But they never got the tape. Yeah, they have some still shots from the tape. No, but they had the benefit to review the tape at least five times, and they relied heavily on the tape in the grand jury. Well, what else do you have besides what you call the destruction of the video? As case law supports, we have the extended incarceration by Mr. Drake. Well, that's a different factor than the prejudice, right? No, that falls under the prejudice, the four, one of the four factors. It also indicates, as case law supports, the anxiety that perhaps the... Well, I mean, what do you have in terms of Not much. Well, at the federal trial, our position is that the destruction of the tape would not have occurred had the federal government indicted sooner and initiated because... You mean because they're more competent? Well... And the FBI would have said, don't destroy that tape. I believe the inference is that that probably would have happened. I wonder if I can follow up on Judge Tashima's question. He's got one of the prongs of Barker versus Wingo, which is the four-part test that you've got to show the balance on that if, in fact, we assume arguendo that the territory of Guam is one and the same for all practical purposes with the federal government. So how does your client come out on the other test? Just putting aside for a moment the issue of prejudice that Judge Tashima has dealt with. Well, we have the delay. The other three delays are the length of the delay, the reasons for the delay. Right. And under those, Your Honor, as we have indicated, oh, and number three is whether or not the defendant asserted his right for a speedy trial. We know that he did assert his right, so... Well, he asked for a lot of continuity, lots of continuances and changes and the kinds of things that even if we were applying the Federal Speedy Trial Act might not even result in a finding of that nature because of his own actions. Well, we do know that his last assertion was made October the 6th of 2004, and after that date there were no other waivers of his Speedy Trial Act. So how long was the delay from that point? From October of what, you say 2004? From October 6, 2004 to October 3rd of 2005 is when the federal trial began, and given the fact that the federal government undertook no further investigation, relied solely on the territorial investigation, their police reports, we believe that from that period of time there certainly was an undue delay, and as the court in Carsonbaum indicated, that the protection of the appellant's right to a speedy trial lays heavily with the government, not with the appellant. Obviously, the defendant has only so much power that he can, that he has, and that is to assert his right to a speedy trial. He did all that he was able to do, and the government, and I believe the federal judge and the federal government, overran his Sixth Amendment rights to a speedy trial. Also, maybe we should, you can continue using your time, you've got about five minutes left, maybe it's a good time to hear from the government. That's fine, I will reserve the five minutes for a speedy trial. Thank you. Good morning, Your Honor. Rosetta St. Nicholas for the appellee, Haffaday from Guam. Your Honor, the first thing I wanted to focus on is this whole issue of dual sovereignty versus sole sovereignty. Defense, the appellant has said that her case dealt with the issue of tribals, of a tribe. It did not deal with the issue of speedy trial, and so we do not believe that Wheeler is applicable. Well, let me ask you, let me ask the Congress question. What's your strongest case that it's not that there is dual sovereignty here? Your Honor, well, we're not, Your Honor, there is a way... That's not your position that there's dual sovereignty, is it? Correct. Our position, Your Honor, is that anything that happened in the territorial court is pre-indictment delay. Therefore, under Lavasco, a due process analysis should apply. That is our position. Well, what about the Sixth Amendment? The Sixth Amendment applies too, right? It does, Your Honor, and under the test of Barker versus Wingo, if we analyze it under Barker versus Wingo, we have a 21th period of delay for the local government, plus a three and a half month delay for the federal. So that certainly is presumptively prejudicial. I think that the Ninth Circuit has held that this delay as long as, or as little as, 13 months is prejudicial. The reason for the delay, Your Honor, weighs against the defendant. The defendant waived his right to speedy trial four times, October 8, 2003, December 11th, 03, March 9th, 04, and July 2nd, 04. Most of the delay was for his benefit, either he was obtaining new counsel. There is also, Your Honor, one stipulation to vacate trial from December 15, 2003 for approximately four months. There were also six motions filed in the local case. If there was delay, it was delay taken for the defendant's benefit. Oh, but that's not, I mean, maybe he's responsible for some of the delay, but if you, you know, look at the record, for instance, I mean, the Superior Court there, I mean, took, what, six or eight months or something like that? Yes, it did. That's not the defendant's fault, and then, you know, one of the requests for the, you know, to be relieved as counsel is because the case has gone on so long, right? I mean, it's been sitting around for like, you know, a year or over a year, and the lawyer finally says, well, I got to get out of this case. So, I don't know if you can attribute that to the defendant. Well, I'm not sure what the defense attorneys were thinking, whether they were thinking this has gone on too long, but if you look at the record, you see a pattern. When there's an indictment, the defendant asserts. Then, shortly after he waives, after a period of times, after the waiver, he asserts, and then he speedily files a motion to withdraw. He asserts again, then he waives the time, or he enters into a stipulation. If we look at the pattern, it looks like this defendant is in control, and the delay is something that he is acquiescing in, and he's certainly filing those waivers. What's going on with the attorneys, I'm not sure. As far as the defendant's assertion of the right, again, we're back to that pattern of asserting and waiving, asserting and waiving. Again, he asserted three times, and the last two So, this is not the government's fault that the defendant waived his right to speedily trial four times. This is just what occurred. What was the purpose of dismissing the first indictment? As I understand it, the first, in the co-conspirators, was taken out, and the indictment was superseded. I believe the co-conspirators name was Ernie Wustik, and so I think that was why it was taken out. Something had transpired. Again, I don't know what... Taken out as in killed, or removed from the indictment? Oh, I'm sorry, removed from the indictment. We know later that the co-defendant actually testified in the federal trial, and testified against Drake, and that, you know, this was a plan, that they had gone around with the guns. They bought methamphetamine, and that they were planning to commit all these robberies, and Drake was with Ernie Wustik, and he was also with his mother, Drake's mother, during the offense, or speedily, right after. The next factor under Barker v. Wingo is the prejudice to the defendant, and the government contends that there was no discovery lost. If there was... What about the video tape, the surveillance tape? That is a normal occurrence that occurred when, as I understand, when they have recordings, they are taped over after 30 or 60 days, and that is what occurred in this case. It was not something that the federal government did. It is something that occurred within 30 days after the defendant was indicted for his offense on September 4, 2005. So it's something that occurred early on the case, early in the territorial case, and was not something that the federal government participated in. No, but presumably, say if the FBI had gotten in there earlier, they would have told the store owner, don't destroy that tape, right? Certainly, Your Honor. I have noticed that the federal agents have the benefit of a lot more training, and they're certainly at an advantage that likely would have happened. But, Your Honor, as far as the tape being erased, it wasn't erased. There were stills, and if the court were to review the stills, the photographs, or the evidence, would still show the robber entering the room, the defendant pointing the weapon, and there are several stills, and there are only seconds between each still. So the entire tape was not destroyed or erased. The defense still has it, and the defense can review it and see that, well, it was Defendant Drake that came in and committed the robbery, not some other guy that came in in the seconds between the two stills. So the evidence was not lost. The defense didn't have the entire tape. They had the stills, but the stills still recapture what occurred in the, during the robbery. I want to go back to Wheeler again for a minute. Do you, for purposes of our analysis, counsel, do you agree that if we assume that under Wheeler that the territory of Guam, the United States, should be considered one sovereign, why would that same logic not also apply to our double, to our speedy trial analysis under the Sixth Amendment? Your Honor, Wheeler case is a case that dealt with double jeopardy. I understand that. What I'm trying to get is, I'm trying to see why, from an analytical perspective, why the reasoning should not be the same. Why should we not treat this case as if the federal government was in this from the beginning, albeit in part through the territory of Guam? Should our analysis not be that if the federal government had been in from the beginning, what would we be considering in this case for purposes of Sixth Amendment analysis? Your Honor, what the defense has done, and this actually took me a while to understand, is to look at the double jeopardy analysis as contained in Barcus. One sovereign cannot tread or bar prosecution of another. The exception is called the Barcus exception. That is where you have one state that dominates another. If we look at that exception, this is again under dual jeopardy purposes. The Barcus exception is a narrow exception and is limited to a situation where one sovereign so thoroughly dominates or manipulates a prosecution machinery of another that the latter retains little or no volition. This is a case out of the First Circuit, and I apologize, I did not cite it. It's U.S. v. Guzman, 85 F. 3823. So what Guzman is doing is it's explaining the double jeopardy, the Barcus exception. The key there is dominion. Now, that is a double jeopardy standard, and we're trying to almost make that round peg fit into the square hole of speedy trial, and so that's what we contend surely. Let's assume for a moment that we're not talking about applying all of the analyses that would apply to double jeopardy. Let's assume that under the concept that we learned, that for purposes of our analysis, we look at this as if the territory of Guam and the United States are one and the same for purposes of prosecuting this case. What's wrong constitutionally with our analyzing the case on that basis? Well, first off, there's no authority. This issue hasn't been raised head-on, and the defense hasn't found a case that's on all fours. I know from my... I understand that, but again, for purposes of our analysis, why would we not be the Sixth Amendment claims of the defendant as if it had been the federal government that prosecuted this case from the beginning? Two points. We did not exercise dominion control. I mean, the federal government did not exercise dominion control over the local government, but if the court were to find that, it would be... it would frustrate the federal interest in prosecuting a case. What about Judge Tashima's questions? He had the colloquy with your opposing counsel about the dialogue between the federal prosecutorial authorities and the Guam prosecutorial authorities. They obviously worked together because one picked up the case right after the other one was dropped. So, it's maybe like it's one big office. They clearly can control if they want to. If they want to take the case, they can clearly do it. But it's kind of like the Guam prosecutors are kind of the understudies, the junior partners, if you will, of the federal agents. That seems to be pretty well established, does it not? No, I don't believe so. You don't think so? There is... you know, there is the timing. The 15th was the date of the dismissal. It was dismissed two days after. Is there anything in the record which establishes the initial contact between the federal government and the local prosecutor in this case? There is. And what is that? In the transcript, there is a statement by the prosecutor, Lewis Littlepage. I can review that and find it. It's in the transcript. But it was simply notifying. It was not... we're not in a situation... Okay, yeah, but I'm interested in the timings. The robbery occurred on September 14th, 03. September 4th, 03. I don't know exactly when the indictment was brought in the territory, but in any event, the sentence in federal court was January 20th, 06. And somewhere between the federal indictment, which was on the 15th, I guess, of June 05, somewhere prior to that, there had to be some sort of contact. And that's what I'm focusing on. Will we find... do you happen to know the date? Your Honor, I do not know the date. I believe that it was around the time of June 05. So there's no evidence of any federal contact with the territory in this case until just very shortly before June 05? As I understand it, yes. All right. Just that one. And there is... it is an affidavit. The prosecutor in the local case is Lewis Littlepage. All right, so it'll be in the... Littlepage. Is that a... was he a witness? No, he was a prosecutor in the case. I think that there was... there was a request for... So what am I looking... when I go to the record, what am I looking for? It was... it was taken up to the Supreme Court because the defendant... to the Guam Supreme Court because I believe the defendant followed a motion to hurry this along. And I... Your Honor, I will review that and I can get that to you. Well, what is the that? I mean, is it testimony? Is it a document? What is it? It's an affidavit or declaration by the prosecutor as far as the speedy trial. I don't remember the exact... All right, a declaration or affidavit of the prosecutor. Okay, thank you. Anything further? Your Honor, we contend that anything that happened in the Superior Court, in the Territorial Court, is pre-indictment delay. Under the test of Barker v. Wingo, none of the factors weigh heavily in the defendant's favor. So there's therefore no constitutional speedy trial violation. If the defendant... the appellant has argued that the Speedy Track Act... Speedy Trial Act should apply to the local offense, but under the provisions of 18 U.S.C. section 3161, these do not apply to local offenses. There are other... other proceedings under the exception or other charges. I'm referring to 3161 G1. Your Honor, our contention is that these only apply... the Speedy Trial Act only applies to federal offenses. Under 3172, as a term offense means any federal criminal offense, which is in violation of any Act of Congress and is triable by any court. And that Speedy Trial Act should only apply to a federal offense. So the Act does not apply to the Territorial Offense. Otherwise, Your Honor, we do submit and believe that the other... the remaining issues... the suppression... they should not have been granted. The field identification of the defendant was appropriate. There was no suggestive identification of the defendant when he was pulled over and that the photo spread... it uses photographs of people who are similar in body mass and size. As I... as I... We understand your argument for the briefs, counsel. Thank you. Thank you. Ms. Fusilier, you have some reserve time. Your Honor, I would like to just respond. Mr. Drake did file, I believe it was April the 29th, 2005, a writ of mandamus in order to force the territorial judge to rule on his motions. So there had been... I haven't calculated the time. It might have been close to nine months or more that the judge... that the territorial court had not ruled on motions. It was only after that that I believe that the motions were ruled on. So the delay... the cause of delay under the Wingo was not squarely because of any delay strategy on the part of Mr. Drake. Also, I would like to indicate that... Counsel, is it significant that the entire elapsed time between the robbery itself and the conviction in the federal court is basically two years, maybe two years and one month? That doesn't seem particularly lengthy given Barker versus Wingo. It was just, what, five years and some other situations. Your Honor, it wouldn't be significant if Mr. Drake had not asserted his Sixth Amendment right to a speedy trial. And the case speaks to the fact that once a constitutional right is asserted, the temporal amount of time becomes almost inconsequential. That the constitutional right exists in order to be implemented. And when he has no longer waived this constitutional right, the courts then were mandated in order to bring him to trial within that period of time. How long was your client incarcerated during the period when he was at proceedings pending before the Superior Court of Guam? He was incarcerated for the entire time, Your Honor. During the entire time? Yes. For the entire time, according to how I saw the record and I indicated that in my brief as well. So, two and a half years roughly before he got switched over to the federal government? He was arrested September 14, 2003. He was sentenced in the federal court January 20, 2006 and he remained in custody all that time and remains in custody today. I would also like to indicate that, although the government indicates that Wheeler is not relevant in the district court's denial of the motion to dismiss based on a violation of the Sixth Amendment, in volume one of the appellant's excerpts of record, page 185, in the district court's written decision, it says Wheeler is not controlling because, among other things, it involves the power of the Navajo. However, Wheeler's discussion of the nature of territorial government is instructive to the extent that it analogizes the relationship of a federal territory and the United States with the city and the state. So it did rely on Wheeler because Wheeler remains the almost landmark case relevant to dual sovereignty or one sovereignty. Also on that same page, the court refers to United States versus Carriaga at 197 U.S. App Lexis and Carriaga indicated that there was no discussion but that the territory of Guam is in fact an instrumentality of the federal government. So unless there is some overriding purpose, which none of the cases indicate would be or exist, there is no strong constitutional basis not to extend the double jeopardy right as it relates to, as it's treated under other cases, to the speedy trial right as well. And on that, your honors, we would submit. Thank you, counsel. The case just argued will be submitted for decision.
judges: O'scannlain, Tashima, Smith